UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BERTHA M FONTENOT, *et al*, § § Plaintiffs, § VS. § CITY OF HOUSTON, *et al*, § § Defendants. § § § § § § | CIVIL ACTION NO. 4:12-CV-03503 |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Pending before the Court is defendants', Steve McCraw ("McCraw") and Susan Combs ("Combs") (collectively "Texas Defendants"), motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1), (6) (Docket No. 38). The plaintiffs, Bertha Fontenot, David Miller, and Santa Zamarron (the "plaintiffs"), have submitted a response and appendix of exhibits (Docket Nos. 45 and 45-1). Also before the Court is Texas Defendants' reply (Docket No. 55). Having carefully reviewed the parties' submissions[1], the record and the applicable law, the Court hereby GRANTS Texas Defendants' motion to dismiss with respect to the due process claim arising under the Texas Constitution as to McCraw, the entire cause of action as to Combs, and DENIES the motion with respect to all other claims.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Texas Defendants are officers of the state of Texas. Steve McCraw is Director of Texas Department of Public Safety ("DPS") and Susan Combs is Texas Comptroller of Public

---

[1] The Court did not consider the plaintiffs' appendix of exhibits in the resolution of this motion.

Accounts. Bertha Fontenot is an individual residing in Ft. Bend County, Texas; David Miller and Santa Zamarron are individuals residing in Harris County, Texas.

Texas has a "Driver Responsibility Program" ("DRP") that requires the imposition of surcharges for certain traffic violations. *See* Tex. Transp. Code § 708.001 *et seq.* Subchapter C, entitled "Surcharges for Certain Convictions and License Suspensions," specifies the offenses that are punishable by imposition of a surcharge. *Id.* at §§ 708.101-106. One such offense subject to a surcharge is codified in Section 521.021. It prohibits the operation of a motor vehicle without a valid driver's license. *Id.* at § 708.104. The DRP directs the DPS to assess the surcharges against any person convicted of an enumerated offense. After surcharges are collected by the DPS, the monies are remitted to the Comptroller. *Id.* at § 708.156.

The plaintiffs were convicted of violating Section 521.025 of the Texas Transportation Code which provides that drivers in Texas must "have in the person's possession while operating a motor vehicle the class of driver's license appropriate for the type of vehicle operated." However, conviction for violating Section 521.025 is not an offense subject to a surcharge. *See* Tex. Transp. Code § 708.001 *et seq.*

The City of Houston ("City"), through an automated system, notifies the DPS of convictions for violations of the Texas Transportation Code. The City's system erroneously reported that persons convicted of Section 521.025 (a non-surchargeable offense) were instead convicted of 521.021 (a surchargeable offense). The DPS subsequently assessed and, in some instances, collected surcharges of up to $300 from those incorrectly reported as being convicted of Section 521.021. The surcharges received by the DPS were subsequently remitted to the Comptroller.

In their first amended class action complaint, the plaintiffs allege that McCraw, in his official capacity as Director of Texas Department of Public Safety, and Combs, in her official capacity as Texas Comptroller of Public Accounts, have the ministerial task of notifying persons who were convicted of a surchargeable offense of the amount owed, charging the lawful amount for surcharges, and collecting that amount. Furthermore, the plaintiffs allege that Texas Defendants have no discretion to assess or collect a surcharge under the DRP for violations of Section 521.025. The plaintiffs claim that for Texas Defendants to charge and collect any amount under Section 521.025 is an *ultra vires* act and violates the rights of the plaintiffs' to due process of law under both the United States and Texas Constitutions.

## III.   CONTENTIONS OF THE PARTIES

### A.   Texas Defendants' Contentions

Texas Defendants argue that this Court lacks subject matter jurisdiction over the plaintiffs' claims for three reasons: (i) Texas Defendants are immune from the plaintiffs' state law claims, (ii) Texas Defendants are immune from suit seeking repayment of surcharges, and (iii) the plaintiffs lack standing to seek declaratory or injunctive relief.

Alternatively, Texas Defendants contend that, even assuming the Court has jurisdiction, the plaintiffs' claims should be dismissed because the plaintiffs have failed to state a claim upon which relief could be granted. Specifically, Texas Defendants contend that the plaintiffs have failed to state a claim that Texas Defendants acted *ultra vires* and have not stated a cognizable property interest protected by due process. Alternatively, even if the plaintiffs have a property interest, they have not stated a claim that they are entitled to more process than they received.

B. **Plaintiffs' Contentions**

The plaintiffs argue that this Court has subject matter jurisdiction over their claims because the *ultra vires* acts of Texas Defendants stripped them of Eleventh Amendment immunity and the plaintiffs have sufficiently pled an on-going injury that satisfies standing for equitable relief.

The plaintiffs also contend that Texas Defendants alternative arguments for dismissal should be rejected because they have sufficiently pled that Texas Defendants' acts were, in fact, *ultra vires*—no statute or legislative enactment gives Texas Defendants authority to assess and collect surcharges from the plaintiffs. Furthermore, the plaintiffs argue, they have a property interest in the money unlawfully assessed and/or collected as surcharges.

IV. **STANDARD OF REVIEW**

A. **Rule 12(b)(1)**

Federal Rule of Civil Procedure Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction. "If [a federal] court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." FED. R. CIV. P. 12(h)(3). Because federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See, e.g., Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). Therefore, the party seeking to invoke the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *see also Stockman*, 138 F.3d at 151.

When evaluating jurisdiction, "a [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also Vantage Trailers*, 567 F.3d at 748 (reasoning that "[i]n evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations"). In making its ruling, the court may rely on any of the following: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *MDPhysicians*, 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413).

B.     Rule 12(b)(6)

A defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Under the requirements of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Twombly*, 550 U.S. at 555). Even so, "a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Therefore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Nevertheless, when considering a 12(b)(6) motion to dismiss, a court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail. *See Twombly*, 550 U.S. at 563, 1969 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

IV.   ANALYSIS AND DISCUSSION

The Court grants in part and denies in part Texas Defendants' motion to dismiss.

A.   **Texas Defendants' Immunity From State Law Claims**

Sovereign immunity, pursuant to the Eleventh Amendment of the federal Constitution, is the "privilege of the sovereign not to be sued without its consent." *Virginia Office for Prot. & Advocacy v. Stewart ("VOPA")*, ––– U.S. –––, 131 S. Ct. 1632, 1637, 179 L.Ed.2d 675 (2011).

Therefore, suits against a state are barred unless it "consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). This is true whether a state is sued by a citizen of another state, a citizen of a foreign state, or by one of its own citizens. *See Hans v. Louisiana*, 134 U.S. 1 (1890). The sovereign immunity bar "applies not only to the state itself, but also protects state actors in their official capacities." *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010).

A narrow exception to this general rule was created by *Ex parte Young* and its progeny. *See* 209 U.S. 123 (1908). Under the *Ex parte Young* exception, a state official may be sued in his official capacity for that official's violation of federal law. *K.P.*, 627 F.3d at 124. The exception "has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (quoting *Young* 209 U.S. at 160). The theory is that because a state cannot authorize action that violates federal law, a state actor is stripped of immunity and can be sued by a private citizen in this circumstance. *Id.* Claims of violation of state law, however, "do not implicate federal rights or federal supremacy concerns." *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011). Thus, "the *Young* exception does not apply to state law claims brought against [a] state." *Id.*

The plaintiffs claim that Texas Defendants violated their rights to due process of law under the Texas Constitution. Even assuming that the plaintiffs' due process rights were violated, this claim must be dismissed because it is clearly a matter of state law. Texas Defendant's motion to dismiss this claim is granted.[2]

---

[2] The plaintiffs' claim that Texas Defendants actions were *ultra vires* is discussed in Section IV.D, *infra*.

### B. Texas Defendants' Immunity From Repayment of Surcharges

*Ex parte Young* provides a narrow exception to Eleventh Amendment immunity and the Supreme Court has been clear that the only prospective relief is available under the exception. *See e.g.*, *Edelman v. Jordan*, 415 U.S. 651 94 S. Ct. 1347, 1357, 39 L. Ed. 2d 662 (1974); *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002). Actions that seek to impose liability for past conduct and recover damages are not permissible. *See Edelman*, 415 U.S. at 663 ("Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). This is because "[w]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Dep't of Treasury of State of Indiana*, 323 U.S. 459, 464, 65 S. Ct. 347, 350, 89 L. Ed. 389 (1945) overruled on other grounds by *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002).

However, the law is equally clear that "relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." *Papasan v. Allain*, 478 U.S. 265, 278, 106 S.Ct. 2932, 2940 (1986). The test is "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *VOPA*, 131 S. Ct. at 1639 (quoting *Verizon*, 535 U.S. at 645). In administering this test, courts must look to "the substance rather than to the form of the relief sought." *Papasan*, 478 U.S. at 278 (internal citation omitted). The same standard applies when the claim is that an officer acted *ultra vires*.

*See Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 689, 102 S. Ct. 3304, 3317, 73 L. Ed. 2d 1057 (1982) ("If the action is allowed to proceed against the officer only because he acted without proper authority, the judgment may not compel the State to use its funds to compensate the plaintiff for the injury.").

Here, Texas Defendants argue that the plaintiffs seek a retrospective award of money damages and that such relief is barred by the Eleventh Amendment because the repayment of surcharges that the plaintiffs request would come from the general revenues of the state of Texas. Texas Defendants further contend that even though the plaintiffs have styled their prayer for relief as a refund of money rather than as an award of damages, this formulistic difference does not overcome the Eleventh Amendment bar. *See Ford Motor Co.*, 323 U.S. 459 (holding that the Eleventh Amendment barred an action by a taxpayer seeking a refund of taxes that were paid under protest).

To the extent that the plaintiffs' prayer for equitable relief encompasses a request for an order from this Court directing Texas Defendants to pay money damages to the plaintiffs (*see e.g.*, First Am. Compl. at 34, Prayer ¶ (D)), such relief is barred by the Eleventh Amendment and this Court has no jurisdiction to entertain the claim.

However, the plaintiffs also seek a declaratory judgment that Texas Defendants' actions are in violation of the U.S. Constitution, an order enjoining the incorrect reporting of Section 521.025 convictions as 521.021 convictions, an order enjoining the maintenance of incorrect records of conviction, and a declaratory judgment that Texas Defendants' actions are *ultra vires*. These requests for relief are aimed at correcting on-going allegedly unconstitutional behavior and are prospective in nature. They seek to conform Texas Defendants' conduct to federal and state law. These claims for relief are not barred by the Eleventh Amendment.

Moreover, the Court is of the opinion that were the plaintiffs to prevail and the Court were to grant declaratory relief, that grant would necessarily precipitate refund of the plaintiffs' money. In that instance, a refund would not be an award of damages for unlawful past conduct; its purpose would not be to compensate the plaintiffs for the past injury. *See Papasan*, 478 U.S. at 278. Rather, a refund would have an ancillary effect on the state treasury resulting from the grant of prospective "relief that serves directly to bring an end to [Texas Defendants'] present [unlawful action]," which includes retaining money to which they allegedly have no lawful claim. *Id.* Indeed, it would be an anomaly for this Court to enter an order that Texas Defendants' action is unconstitutional, while permitting Texas to keep the fruits of that unlawful behavior.[3]

### C. Plaintiffs' Standing To Seek Declaratory or Injunctive Relief

"A question of standing raises the issue of whether [a] plaintiff is entitled to have the court decide the merits of [a] dispute or [a] particular [issue]. Standing is a jurisdictional requirement that focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Pederson v. La. State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000) (citing *Cook v. Reno*, 74 F.3d 97, 98 - 99 (5th Cir. 1996) (internal quotations and footnotes omitted)). The United States Supreme Court has explained that in order to demonstrate Article III standing, a plaintiff must satisfy three elements:

> First, [a] plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or

---

[3] To the extent Texas Defendants rely on *Ford Motor Co.*, the case is distinguishable. In *Ford Motor Co.*, the Supreme Court found that the plaintiff's claim was barred by the Eleventh Amendment because it was really an action against the state of Indiana, even though state officials were named as defendants. 323 U.S. at 463. The Court came to this conclusion after careful analysis of the state statute upon which the plaintiff based its cause of action. *Id.* Because the action was against the state, and the state had not consented to be sued in federal court, the Supreme Court dismissed the case. *Id.* at 462. In this case, however, the plaintiffs' claims are not rooted in a state statute that provides for a private right of action. Furthermore, the plaintiffs' have invoked the *Ex parte Young* and *ultra vires* exceptions to avoid the Eleventh Amendment bar.

imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of [and] . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'

*United States v. Hays,* 515 U.S. 737, 742-43, 115 S. Ct. 2431, 132 L. Ed.2d 635 (1995) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 - 61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992)); *see also Sierra Club v. Peterson*, 185 F.3d 349, 360 (5th Cir. 1999).

To obtain injunctive relief, "an additional inquiry is required, namely that [a plaintiff] show that [he is] likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury." *James v. City of Dallas, Tex.*, 254 F.3d 551, 562 - 63 (5th Cir. 2001) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L.Ed.2d 675 (1983) ("'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.'") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 - 96, 94 S. Ct. 669, 38 L. Ed.2d 674 (1974)) (other citations omitted). Nevertheless, "if the injury is accompanied by 'any continuing, present adverse effects,' standing for injunctive relief can be found." *James*, 254 F.3d at 563 (citing *Lyons*, 461 U.S. at 102 (internal quotations omitted) (quoting *O'Shea*, 414 U.S. at 495-96)); *see also Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) ("To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future.").

In the case at bar, the plaintiffs assert claims for declaratory and injunctive relief. Texas Defendants contend that the plaintiffs have alleged only that they were exposed to illegal conduct in the past and make no allegation that they are likely to suffer future injury at the hands of Texas Defendants. As such, the plaintiffs do not have standing to request equitable relief.

Furthermore, with respect to the plaintiffs' claim that final surcharges against them are "presumably" still pending, Texas Defendants argue that the plaintiffs have, at best, demonstrated that it is *possible* that they could be subject to further injury, but have not shown that it is *likely*, as required under *Lyons*.

The Court holds that the plaintiffs have standing to assert claims for equitable relief. Although the parties contest whether the plaintiffs have properly alleged that surcharges are pending, they have clearly alleged that their convictions for violating Section 521.025 were incorrectly reported to DPS as convictions for 521.021. It was on this basis that DPS assessed and collected surcharges from the plaintiffs. It is plain that a record reflecting a more serious violation than that which an individual pled guilty to and was convicted, constitutes a "'continuing, present adverse effect'" such that "standing for injunctive relief can be found." *James*, 254 F.3d at 563 (quoting *Lyons*, 461 U.S. at 102). Therefore, Texas Defendants' motion to dismiss on the basis that the plaintiffs lack standing is denied.

### D. *Ultra Vires* Acts

The term *ultra vires* means "beyond the powers." BLACK'S LAW DICTIONARY 1662 (9th ed. 2009). A state officer is said to be acting *ultra vires* "only when he acts 'without any authority whatever.'" *Pennhurst*, 465 U.S. at 101 n. 11 (quoting *Treasure Salvors*, 458 U.S. at 689). The "Eleventh Amendment does not bar an action against a state official that is based on a theory that the officer acted beyond the scope of his statutory authority or, if within that authority, that such authority is unconstitutional." *Treasure Salvors*, 458 U.S. at 689. In other words, if a state official's actions are *ultra vires*, he is not protected by the state's sovereign immunity and may be subjected to suit.

Texas Defendants claim that because their erroneous assessment and collection of surcharges was based on a mistake—the City's incorrect reporting to DPS—their actions were not *ultra vires*. For support, they cite *Pennhurst* for the proposition that "[a]n *ultra vires* claim rests on 'the officer's lack of delegated power. A claim of error in the exercise of that power is therefore not sufficient.'" 465 U.S. at 101 n. 11 (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)). The essence of the argument is that Texas Defendants did not act "without any authority whatever" because the DRP provided for the assessment and collection of surcharges to those convicted of certain offenses. Although Texas Defendants mistakenly assessed the surcharges in this instance, this claim of error, they argue, is not sufficient because they had been delegated the power to assess surcharges, generally.

The Court disagrees. In *Pennhurst*, the authority on which Texas Defendants base their argument, the Supreme Court was contemplating statutes that confer *discretionary* authority, not *ministerial* duties. The *Pennhurst* Court clearly stated, "suit may not be predicated on violations of state statutes that command purely *discretionary* duties." *Id.* at 110 (emphasis added). Indeed, the Fifth Circuit has hewed to the same understanding. *See Saine v. Hospital Authority of Hall County*, 502 F.2d 1033, n. 4 (5th Cir. 1974) (approvingly citing to *Taylor v. Cohen*, 405 F.2d 277 (4th Cir. 1968) for a description "of when an official's action is *ultra vires*."). In *Taylor*, the court "appl[ied] the rule of *Larson*" which states, "[i]f the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign * * *. The fact that the officer may have *erred in exercising discretion* does not deny immunity to the sovereign." 405 F.2d at 281 (quoting *Larson* 337 U.S. at 695) (internal citations omitted) (emphasis added).

Here, the plaintiffs allege that Texas Defendants had the "ministerial task" of assessing and collecting a surcharge from individuals convicted of a surchargeable offense, but "had no discretion" under the DRP to charge or collect a surcharge in "any amount whatsoever" from an individual convicted of violating Section 521.025 of the Texas Transportation Code. First Am. Compl. ¶ 96. To do so, the plaintiffs claim, "is *ultra vires*." *Id.* In essence, the plaintiffs' claim is that Texas Defendants acted "without any authority whatever" in assessing surcharges on those who did not owe them. This is a claim upon which relief can be granted. Accordingly, Texas Defendants' motion to dismiss on this basis is denied.

### E.   Comptroller Subject To Suit

The plaintiffs allege that Combs, the Comptroller, "had the ministerial task of notifying persons who were convicted of a surchargeable offense of the amount of the surcharge owed, charging the lawful amount for surcharges, and collecting that amount." *Id.* Section 708.104 of the Texas Transportation Code directs the DPS to assess the surcharge for any individual convicted of violating Section 521.021. The only mention of the Comptroller in the DRP is in Section 708.156 where the DPS is directed to remit to the Comptroller all surcharges collected under the DRP.

Texas Defendants maintain that the Comptroller engages in no affirmative action with regard to the DRP and merely receives funds that have been collected by the DPS under the program. Furthermore, Texas Defendants argue that the plaintiffs have failed to state a cognizable claim against the Comptroller because the plaintiffs have not alleged that the simple receipt of monies collected under the DRP constitutes an *ultra vires* act or violates the plaintiffs' due process rights. For these reasons, Texas Defendants contend that the action against the Comptroller should be dismissed.

The Court agrees. The plaintiffs urge the Court to read "collect" as meaning "to actually receive" in an attempt include the Comptroller's action within the scope of their complaint. However, under no reading would the Comptroller's action be *ultra vires*. Section 708.156 directs the DPS to remit collected surcharges to the Comptroller. The Comptroller's actions are not *ultra vires* by simply receiving the funds the statute directs to be sent to her. Moreover, the Court finds no basis in law to impute the DPS' allegedly *ultra vires* actions to the Comptroller. The excerpted portions of Texas Supreme Court cases cited by the plaintiffs are inapposite.[4] None of the opinions provide guidance on whether the Comptroller, who is not alleged to have compelled payment, can be said to have acted *ultra vires* by merely accepting money remitted to her office. Accordingly, the plaintiffs' claims against the Comptroller are dismissed.[5]

F.   **Due Process Claim**

The Due Process Clause of the Fourteenth Amendment imposes certain procedural requirements on the states when they attempt to deprive any person of property. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972). "Property interests protected by the procedural due process clause include, at the very least, ownership of real estate, chattels, and money." *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 822 (5th Cir. 2007); *see also Roth*, 408 U.S. at 572. When property interests are implicated, "the right to some kind of prior hearing is paramount." *Roth*, 408 U.S. at 569-70; *see also Dusenbery v. U.S.*, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002).

---

[4] *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 371 (Tex. 2009) (discussion on sovereign immunity for state officials in state court); *Crow v. City of Corpus Christi*, 284 S.W.3d 366, 371(Tex. 1948) (discussion, on the merits, about the return of money to which the city is not entitled); *State v. Epperson*, 42 S.W.2d 228, 231 (Tex. 1931) (discussion regarding sovereign immunity for state officials in state court).
[5] The Court notes that it disagrees with the plaintiffs' assertion that by dismissing the Comptroller from this action "the *ultra vires* collection of money by government officials [is] rendered 'judgment proof' by the expedient method of forwarding the money to another official." Pls.' Reply V.B.2.

Texas Defendants contend that: (i) the plaintiffs have failed to identify a cognizable property interest of which they were deprived, (ii) even if the plaintiffs had a cognizable property interest they must still identify how Texas Defendants interfered with that interest, and (iii) if there had been no mistake by the City in reporting the plaintiffs' convictions, there would be no deprivation of a property interest because individuals subject to surcharge under the DRP receive all the process that is due. For all these reasons, Texas Defendants contend that the plaintiffs have failed to state an actionable due process claim.

The Court disagrees. The plaintiffs have a cognizable property interest in their money. *See Stotter*, 508 F.3d at 822 ("Property interests protected by the procedural due process clause include, at the very least, ownership of … money."). The plaintiffs allege that Texas Defendants interfered with their property interest by notifying them that a surcharge was due, informing them of the penalty to be imposed for failing to pay the surcharge, but providing no hearing or other opportunity to contest the deprivation. These allegations make out a cognizable due process claim.

Texas Defendants suggestion that the DRP provides the required due process is no answer. Part of the process the DRP provides is notice of the range of potential penalties. The plaintiffs did not receive notice of the assessment of a surcharge under Section 521.025. In fact, the law is to the contrary. Therefore, because the plaintiffs were not aware, at the time of their hearings, that they could or would be subject to a surcharge, Texas Defendants' suggestion to the contrary is disingenuous.

## V.  CONCLUSION

Based on the foregoing discussion, the Court HOLDS that the plaintiffs' claim, based on the due process clause of the Texas Constitution, is dismissed as to McCraw. The Court also HOLDS that all claims against Combs are dismissed. The motion is denied in all other respects.

It is so **ORDERED**.

SIGNED on this 18th day of September, 2013.

_____
Kenneth M. Hoyt
United States District Judge