UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BERTHA M FONTENOT, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:12-CV-3503 |
| § | |
| CITY OF HOUSTON, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Pending before the Court are the defendants', City of Houston (the "City") and Charlotte Booker, motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Docket Nos. 156 and 157). The plaintiffs, Bertha Fontenot, David Miller, and Santa Zamarron (collectively, the "plaintiffs"), have responded (Docket Nos. 182 and 183), and the defendants have replied (Docket Nos. 188 and 189).[1] Having carefully considered the parties' submissions, the record, and the applicable law, the Court finds and concludes as follows.

### II.  FACTUAL BACKGROUND

The City of Houston, located in Harris County, is the most populous municipality in the State of Texas (the "State"). Charlotte Booker is the Clerk of Court and Deputy Director for the City's Municipal Courts. Bertha Fontenot is an individual residing in Fort Bend County, Texas, which neighbors Harris County; David Miller and Santa Zamarron are individuals residing in Harris County.

---

[1] Also pending before the Court is plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure (Docket No. 71). The parties have filed a several briefs in connection with the motion (Docket Nos. 105, 114, 129, 135, 136, 144, and 151). Presumably because the Rule 23 briefs were filed prior to the motion for summary judgment, the parties address the merits of the class claims in their summary judgment briefing. In this Order, however, the Court only adjudges the claims of the named plaintiffs.

The State has a "Driver Responsibility Program" ("DRP") that includes the imposition of surcharges for certain traffic violations. *See* TEX. TRANSP. CODE § 708.001 *et seq.* Subchapter C, entitled "Surcharges for Certain Convictions and License Suspensions," specifies the offenses which are punishable by imposition of a surcharge. *Id.* §§ 708.101-106. One such offense subject to surcharge is Section 521.021, the "no DL" provision, which prohibits the operation of a motor vehicle without a valid driver's license. *See id.* § 708.104. The DRP directs the Department of Public Safety ("DPS") to assess the surcharges on any person convicted of an enumerated offense. *Id.* §§ 708.101-106.

The plaintiffs were all convicted of violating Section 521.025 of the Texas Transportation Code, which provides that drivers in the State must "have in the person's possession while operating a motor vehicle the class of driver's license appropriate for the type of vehicle operated." Conviction for violating Section 521.025, the "failure to display" provision, is not an offense subject to a surcharge. *See id.* § 708.001 *et seq.*

The City, through an automated system called the Integrated Case Management System ("ICMS"), notifies the DPS of convictions for violations of the Texas Transportation Code. Over a period of nearly seven years, beginning in April 2006 and ending in December 2012, the ICMS erroneously reported that persons convicted of failure to display (a non-surchargeable offense) were instead convicted of No DL (a surchargeable offense). This occurred because the City linked its failure to display action code to the DPS' No DL action code. The misreporting affected tens of thousands of individuals.

The DPS contracted with Gila LLC d/b/a Municipal Services Bureau ("MSB") to collect surcharges from persons convicted of a surchargeable offense. When the DPS received conviction data, it forwarded it to MSB. MSB then issued surcharge collection letters—which

threaten license suspension if surcharges are not paid—to all those reported as having been convicted of a surchargeable offense. The DPS, through MSB, assessed and collected surcharges of up to $300 from those incorrectly reported by the City as being convicted of No DL.

The plaintiffs bring this class action, under 42 U.S.C. § 1983, because their failure to display convictions were reported to the State as No DL convictions, and they were assessed a surcharge as a result. The plaintiffs allege that by misreporting their convictions, the City and Booker deprived them of their constitutional right to due process.

### III.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (quoting *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Id.* (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)).

When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## IV. CONTENTIONS OF THE PARTIES

### A. Defendants' Contentions

The City advances three primary arguments: (1) the conduct of which the plaintiffs complain does not amount to a constitutional violation; (2) the plaintiffs cannot establish the elements of the *Monell* cause of action required for the imposition of municipal liability;[2] and (3) the plaintiffs' section 1983 claims are moot.

Booker advances four primary arguments: (1) she did not act *ultra vires* because she did not play any role in the miscoding error, and, in any event, an error in performing a duty does not constitute an *ultra vires* act; (2) her actions did not violate the Constitution; (3) the plaintiffs' claims are moot; and (4) no statute allows for attorneys' fees for *ultra vires* actions in federal court.

### B. Plaintiffs' Contentions

The plaintiffs contend that they have pointed to genuine issues of fact bearing on the question of whether the defendants violated their constitutional rights. They also argue that they

---

[2] The defendants also argue that they should be awarded summary judgment on plaintiffs' failure to train claim. Because the plaintiffs did not address this contention, and the facts presented by the City demonstrate that it is entitled to judgment as a matter of law, the Court grants summary judgment in the City's favor. *See* FED. R. CIV. P. 56(e); *Sec. & Exch. Comm'n v. Spence & Green Chem. Co.*, 612 F.2d 896, 900 (5th Cir. 1980).

have established that City policy was to report failure to display convictions as No DL convictions, have identified the relevant policymakers, and have shown that the policy caused the constitutional deprivation—thus, satisfying the *Monell* elements. The plaintiffs further contend that Booker's actions were *ultra vires* because the evidence shows that her actions conflicted with her statutorily prescribed duty. Finally, as to both the City and Booker, the plaintiffs argue that their claims are not moot.

## V. ANALYSIS AND DISCUSSION

### A. Municipal Liability

A plaintiff seeking to impose section 1983 liability on a municipality is required to identify a governmental policy or custom that caused the deprivation of a federally protected right. *See Board of Cnty Com'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)); *see also Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). Specifically, the plaintiff must prove: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Only when this test is satisfied does the plaintiff establish what *Monell* requires—deliberate action attributable to the municipality that is the direct cause of the constitutional violation. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010); *see also Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008) (recognizing that municipal liability cannot be based on *respondeat superior*).

The plaintiffs claim that the City's official policy or custom was and is to report failure to display convictions to the State as No DL convictions without any notice or hearing, in violation

of their Fourteenth Amendment right to due process. (Docket No. 112, Second Am. Compl. § VIII ¶¶ 127-29). The City argues, among other things, that there is no underlying constitutional violation to support the plaintiffs' 1983 claim. More specifically, the City contends that the plaintiffs have not created a fact issue as to whether its conduct was accompanied by more culpability than negligence, and thus, they have failed to state a claim under the Fourteenth Amendment.

The Court agrees. It is well-settled that mere negligence does not constitute a deprivation of due process under the Constitution. *See, e.g., Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). To prevail on a Due Process Clause claim brought under section 1983, the plaintiff must show more than a lack of due care on the part of the government entity or official. *Daniels*, 474 U.S. at 332. Indeed, one does not even state a constitutional claim under section 1983 by showing extraordinary negligence; "one must allege the sort of abuse of government power that is necessary to raise an ordinary tort by a government agent to the [stature] of a violation of the Constitution." *Rankin v. City of Wichita Falls, Tex.*, 762 F.2d 444, 447 (5th Cir. 1985) (internal quotation omitted).

It is undisputed that the City did not have an express policy of reporting convictions for failure to display as convictions for No DL. (*See* Docket No. 182, Plaintiffs' Response to Defendant City of Houston's Motion for Final Summary Judgment, § II.C). The evidence clearly establishes that City employees entered convictions for failure to display properly in the ICMS. The uncontroverted evidence also shows that the City's failure to display code was erroneously linked to the State's No DL code. As such, in every instance that a conviction for failure to display was entered by City employees, it was reported to the State as a conviction for No DL.

Although the plaintiffs argue that there were a number of intentional acts taken by the City regarding how to cite, charge, fine, prosecute, convict, and report people for various driver's license-related offenses, they point to nothing in the record showing that the linkage of the two distinct offenses in ICMS—the very basis of the misreporting—was anything but an inadvertent coding error.[3] It is true that this one error affected tens of thousands of individuals, but the plaintiffs have presented no evidence that it was the product of anything more sinister than negligence.[4] Moreover, the plaintiffs have not created a fact issue as to whether the resulting deprivation was itself intended. *See Campbell*, 43 F.3d at 977 (reiterating the axiom that a negligent act that results in "unintended harm" does not raise due process concerns).

In the Second Amended Complaint, the only federally protected right the plaintiffs allege was deprived is their right to adequate procedure under the Due Process Clause. Because the plaintiffs point to nothing in the record illustrating a genuine issue of fact as to whether the City's misreporting was the result of anything other than negligence, they fail to state a due process claim. And because the plaintiffs have failed to establish a violation of a federally protected right, they necessarily fail to establish the elements required for the imposition of municipal liability. Accordingly, the Court grants the City summary judgment on the plaintiffs' municipal liability claim.

---

[3] The plaintiffs' contention that the City failed to ascertain, before ICMS was launched, whether the system would accurately report convictions is belied by testimony from a City official, which the plaintiffs cite to approvingly, that the linkage between action codes and DPS codes was reviewed (using a sampling process) before it went live.

[4] To create a fact issue regarding whether there was a custom of misreporting convictions, the plaintiffs point to the deposition testimony of Gregory Prier, the Assistant Director of Court Operations for the City's Municipal Courts, and his affirmative responses to questions about the City's "long-standing practice." (*See* Docket No. 182, Plaintiffs' Response to Defendant City of Houston's Motion for Final Summary Judgment, § I.A ¶ G; Docket No. 182-5, Prier Deposition, 77:7-78:6). However, throughout his testimony, Prier categorizes the mismatched codes as a mistake. (*See, e.g.,* Docket No. 156-5, Prier Deposition, 29:13-30:25).

### B. *Ultra Vires* Liability

The term *ultra vires* means "beyond the powers." BLACK'S LAW DICTIONARY 1662 (9th ed. 2009). A state officer is said to be acting *ultra vires* "only when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n. 11 (1984) (quoting *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 689 (1982)). To prevail on an *ultra vires* claim, the plaintiff must establish that the defendant's action conflicted with a duty imposed upon him by statute. *See Taylor v. Cohen*, 405 F.2d 277, 281 (4th Cir. 1968).[5] However, "suit may not be predicated on violations of state statutes that command purely discretionary duties." *Pennhurst*, 465 U.S. at 110.

The plaintiffs claim that Booker acted *ultra vires*, and in violation of the United States Constitution and the Texas Constitution, when she improperly reported to the State that their convictions for failure to display were actually convictions for No DL. (Docket No. 112, Second Am. Compl. § VIII ¶¶ 157 and 159). Booker argues that her actions were not *ultra vires* because erring while performing a duty does not amount to *ultra vires* action. She also contends that her actions did not violate the Constitution.

Booker's argument that the alleged erroneous act is not an *ultra vires* act was rejected by this Court when put forth by Steve McCraw, the Director of DPS, earlier in this litigation. *See* Docket No. 60; *Fontenot v. City of Houston*, 2013 WL 5274449, at *7 (S.D. Tex. Sept. 18, 2013). Once more, for emphasis, the Court rejects the argument here. Booker had the ministerial task[6] of reporting surchargeable offenses to the State and had no discretion or authority whatever

---

[5] The Fifth Circuit has approvingly cited to *Taylor* for a description "of when an official's action is *ultra vires*." *Saine v. Hospital Authority of Hall County*, 502 F.2d 1033, 1037 n. 4 (5th Cir. 1974)

[6] Ministerial acts are those for which the "law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994) (internal quotation omitted).

to report a failure to display conviction as being a No DL conviction. *See* TEX. TRANSP. CODE § 521.001 *et seq.* For Booker to do otherwise would be *ultra vires*.

The plaintiffs seek a declaratory judgment that Booker's actions were *ultra vires*, in violation of the United States Constitution and the Texas Constitution. This Court found, *supra*, that the plaintiffs have not created a fact issue as to whether the City's (and Booker's, by implication) misreporting was the result of anything other than negligence, thus failing to state a due process claim under the federal Constitution. Because the plaintiffs cannot establish they were deprived of a federally protected right, they fail to state a claim cognizable under section 1983.[7] Accordingly, the Court grants Booker summary judgment on the plaintiffs' *ultra vires* claim.

## VI.  CONCLUSION

For the foregoing reasons, the Court GRANTS the defendants' motions for summary judgment in their entirety. As such, the motion for class certification is DENIED as moot.

**It is so ORDERED**.

SIGNED on this 7th day of August, 2014.

_____
Kenneth M. Hoyt
United States District Judge

---

[7] Although a claim that a municipal officer's action violated the state constitution may give rise to a claim that the action also violated an analogous provision in the federal Constitution, a claim may be brought under section 1983 only when the plaintiff seeks redress of the federally protected right. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105-06 (1989). The Court expresses no opinion regarding whether, on this record, an *ultra vires* claim against Booker may lie under state law.